**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**SANFORD AIRPORT AUTHORITY,**

**Plaintiff/Counterclaim Defendant,** **CASE NO.: 6:23-cv-1563-PGB-DCI**

**v.**

**GREATER ORLANDO AVIATION AUTHORITY,**

**Defendant/Counterclaim Plaintiff.**
**_____________________________/**

# PARTIES' PROPOSED JURY INSTRUCTIONS[1]

[1] All proposed instructions are from Eleventh Circuit Pattern Jury Instructions (2024), unless otherwise indicated, with highlights showing any disputes between the parties, with SAA's proposed language highlighted in yellow and Greater Orlando's proposed language in blue. The nature of the dispute is described in footnotes associated with disputed language..

## PRELIMINARY INSTRUCTIONS

## JURY INSTRUCTION NO. 1

### 1.1 General Preliminary Instruction

**Members of the Jury**:

Now that you've been sworn, I need to explain some basic principles about a civil trial and your duty as jurors. These are preliminary instructions. I'll give you more detailed instructions at the end of the trial.

**The jury's duty**:

It's your duty to listen to the evidence, decide what happened, and apply the law to the facts. It's my job to provide you with the law you must apply – and you must follow the law even if you disagree with it.

**What is evidence**:

You must decide the case on only the evidence presented in the courtroom. Evidence comes in many forms. It can be testimony about what someone saw, heard, or smelled. It can be an exhibit or a photograph. It can be someone's opinion.

Some evidence may prove a fact indirectly. Let's say a witness saw wet grass outside and people walking into the courthouse carrying wet umbrellas. This may

be indirect evidence that it rained, even though the witness didn't personally see it rain. Indirect evidence like this is also called "circumstantial evidence" – simply a chain of circumstances that likely proves a fact.

As far as the law is concerned, it makes no difference whether evidence is direct or indirect. You may choose to believe or disbelieve either kind. Your job is to give each piece of evidence whatever weight you think it deserves.

**What is not evidence**:

During the trial, you'll hear certain things that are not evidence and you must not consider them.

First, the lawyers' statements and arguments aren't evidence. In their opening statements and closing arguments, the lawyers will discuss the case. Their remarks may help you follow each side's arguments and presentation of evidence. But the remarks themselves aren't evidence and shouldn't play a role in your deliberations.

Second, the lawyers' questions and objections aren't evidence. Only the witnesses' answers are evidence. Don't decide that something is true just because a lawyer's question suggests that it is. For example, a lawyer may ask a witness,

"You saw Mr. Jones hit his sister, didn't you?" That question is not evidence of what the witness saw or what Mr. Jones did – unless the witness agrees with it.

There are rules of evidence that control what the court can receive into evidence. When a lawyer asks a witness a question or presents an exhibit, the opposing lawyer may object if he/she thinks the rules of evidence don't permit it. If I overrule the objection, then the witness may answer the question or the court may receive the exhibit. If I sustain the objection, then the witness cannot answer the question, and the court cannot receive the exhibit. When I sustain an objection to a question, you must ignore the question and not guess what the answer might have been.

Sometimes I may disallow evidence – this is also called "striking" evidence – and order you to disregard or ignore it. That means that you must not consider that evidence when you are deciding the case.

I may allow some evidence for only a limited purpose. When I instruct you that I have admitted an item of evidence for a limited purpose, you must consider it for only that purpose and no other.

**Credibility of witnesses**:

To reach a verdict, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, part of it, or none of it. When considering a witness's testimony, you may take into account:

- the witness's opportunity and ability to see, hear, or know the things the witness is testifying about;
- the witness's memory;
- the witness's manner while testifying;
- any interest the witness has in the outcome of the case;
- any bias or prejudice the witness may have;
- any other evidence that contradicts the witness's testimony;
- the reasonableness of the witness's testimony in light of all the evidence; and
- any other factors affecting believability.

At the end of the trial, I'll give you additional guidelines for determining a witness's credibility.

**Plaintiff's Proposed Description of the case**:[2]

This is a civil case. To help you follow the evidence, I'll summarize the parties' positions. The Plaintiff, Sanford Airport Authority, which you will

[2]The parties could not agree on a description and each party submits its own section. For ease of reading, these competing descriptions will not be highlighted.

sometimes hear referred to as "SAA"[3] operates an airport called the Orlando Sanford International Airport. Around 1996, SAA adopted the name Orlando Sanford International Airport for its airport. In 2017, SAA filed applications to register Orlando Sanford International Airport and a logo with the U.S. Trademark Office in order to secure trademark registrations. After the U.S. Trademark Office initially determined those applications were allowable, the Greater Orlando Aviation Authority, who operates the Orlando International Airport, lodged oppositions with the U.S. Trademark office. The U.S. Trademark office then refused to issue trademark registrations to SAA.

SAA filed this lawsuit to appeal that decision of the U.S. Trademark office.[4] SAA argues that there is no likelihood of confusion between SAA's trademarks Orlando Sanford International Airport as well as a stylized logo showing an incomplete oval-like shape sweeping left to right with the words ORLANDO SANFORD above a bisection containing the words INTERNATIONAL AIRPORT and the words WE ARE SFB: SIMPLER. FASTER. BETTER below the bisection. and GOAA's asserted trademarks, namely a registered trademark for a logo

[3] The parties dispute the use of acronyms and party identifiers and have addressed these issues in pending motions. The parties agree the names would change if the Court so orders.
[4] Greater Orlando contends this is not an issue for the jury.

including 2 ovals on the left and the words ORLANDO INTERNATIONAL AIRPORT stacked on top of one another on the right, as well as GOAA's claim that it has trademark rights in the phrase Orlando international airport itself. SAA contends that GOAA's use of the phrase Orlando international airport is generic and therefore not a valid, protectible trademark. SAA further argues that the airports have coexisted in the greater Orlando area since 1996 further demonstrating that there is no likelihood of confusion from a trademark standpoint between these airports.

GOAA responded to that lawsuit by filing a counterclaim in 2023. Through that counterclaim, GOAA contends that SAA has engaged in trademark infringement and unfair competition. SAA denies those claims and contends that GOAA's trademark infringement and unfair competition are barred by the statute of limitations, the doctrine of laches, and/or acquiescence. SAA rebranded its airport as the Orlando Sanford International Airport in 1996 and has operated under that name ever since. GOAA has known about this name since the very beginning in 1995 and took no action to stop SAA from using it. SAA and GOAA spoke and met at length in the late 1990s to address GOAA's concerns with the

name Orlando Sanford International Airport and then GOAA stopped demanding that SAA change its name until GOAA filed its counterclaim in 2023.

**Plaintiff's Proposed Burden of proof**:

Sanford Airport Authority has the burden of proving its case by what the law calls a "preponderance of the evidence." That means Sanford Airport Authority must prove that, in light of all the evidence, what it claims is more likely true than not. So, if you could put the evidence favoring Sanford Airport Authority and the evidence favoring Greater Orlando Aviation Authority on opposite sides of balancing scales, Sanford Airport Authority needs to make the scales tip to its side. If Sanford Airport Authority fails to meet this burden, you must find in favor of Greater Orlando Aviation Authority.

To decide whether any fact has been proved by a preponderance of the evidence, you may – unless I instruct you otherwise – consider the testimony of all witnesses, regardless of who called them, and all exhibits that the court allowed, regardless of who produced them. After considering all the evidence, if you decide a claim or fact is more likely true than not, then the claim or fact has been proved by a preponderance of the evidence.

Both parties have asserted "affirmative defenses." On their respective affirmative defenses, each party has the burden of proving the elements of their defense by a preponderance of the evidence. I'll instruct you on the facts Sanford Airport Authority or Greater Orlando Aviation Authority must prove for any affirmative defense, respectively. After considering all the evidence, if you decide that Sanford Airport Authority or Greater Orlando Aviation Authority has successfully proven that the required facts are more likely true than not on any of their respective affirmative defenses, the affirmative defense is proved.

Greater Orlando Aviation Authority has also brought claims for relief against Sanford Airport Authority called counterclaims. On these claims, Greater Orlando Aviation Authority has the same burden of proof that Sanford Airport Authority has for its claims.

**Defendant's Proposed Description of the case**:

This is a civil case. To help you follow the evidence, I'll summarize the parties' positions. This is a dispute over trademarks related to two local airports. The owners of the trademarks are the Greater Orlando Aviation Authority, which is responsible for Orlando International Airport (I will at times refer to it as

"Greater Orlando"[5]) and the Sanford Airport Authority, which is responsible for the Orlando Sanford International Airport. (I will at times refer to it as "Sanford.")

The claimed marks at issue are on one hand "Orlando International Airport," as both the words and in a stylized version and on the other hand, Orlando Sanford International Airport also both the words and a stylized version. Greater Orlando claims that Sanford's use of "Orlando Sanford International Airport" is confusingly similar to its claimed marks and has been damaged by Sanford's use of the name. Sanford denies those claims and asserts defenses to the claims which will be explained later.[6]

**Defendant's Proposed Burden of proof**:

Greater Orlando has the burden of proving its case by what the law calls a "preponderance of the evidence." That means Greater Orlando must prove that, in light of all the evidence, what it claims is more likely true than not. So, if you could put the evidence favoring Sanford and the evidence favoring Greater Orlando on opposite sides of balancing scales, Greater Orlando needs to make the

[5] See, footnote 3..

[6] Greater Orlando contends that the final sentence may not be necessary as there are no defenses to be tried to the jury as explained in Greater Orlando's motion in limine.

scales tip to its side. If Greater Orlando fails to meet this burden, you must find in favor of Sanford.

To decide whether any fact has been proved by a preponderance of the evidence, you may – unless I instruct you otherwise – consider the testimony of all witnesses, regardless of who called them, and all exhibits that the court allowed, regardless of who produced them. After considering all the evidence, if you decide a claim or fact is more likely true than not, then the claim or fact has been proved by a preponderance of the evidence.

Sanford has asserted "affirmative defenses."[7] On their affirmative defenses, Sanford has the burden of proving the elements of the defenses by a preponderance of the evidence. I'll instruct you on the facts Sanford must prove for its affirmative defenses. After considering all the evidence, if you decide that Sanford has successfully proven that the required facts are more likely true than not on any of their respective affirmative defenses, the affirmative defense is proved.

**Conduct of the jury**:

[7] To be used only if the Court finds there are defenses to be determined by the jury.

While serving on the jury, you may not talk with anyone about anything related to the case. You may tell people that you're a juror and give them information about when you must be in court. But you must not discuss anything about the case itself with anyone.

You shouldn't even talk about the case with each other until you begin your deliberations. You want to make sure you've heard everything – all the evidence, the lawyers' closing arguments, and my instructions on the law – before you begin deliberating. You should keep an open mind until the end of the trial. Premature discussions may lead to a premature decision.

In this age of technology, I want to emphasize that in addition to not talking face-to-face with anyone about the case, you must not communicate with anyone about the case by any other means. This includes e-mails, text messages, phone calls, and the Internet, including social-networking websites and apps such as Facebook, Instagram, Snapchat, YouTube, and Twitter. You may not use any similar technology of social media, even if I have not specifically mentioned it here.

You must not provide any information about the case to anyone by any means whatsoever, and that includes posting information about the case, or what

you are doing in the case, on any device or Internet site, including blogs, chat rooms, social websites, or any other means.

You also shouldn't Google or search online or offline for any information about the case, the parties, or the law. Don't read or listen to the news about this case, visit any places related to this case, or research any fact, issue, or law related to this case. The law forbids the jurors to talk with anyone else about the case and forbids anyone else to talk to the jurors about it. It's very important that you understand why these rules exist and why they're so important. You must base your decision only on the testimony and other evidence presented in the courtroom. It is not fair to the parties if you base your decision in any way on information you acquire outside the courtroom. For example, the law often uses words and phrases in special ways, so it's important that any definitions you hear come only from me and not from any other source. Only you jurors can decide a verdict in this case. The law sees only you as fair, and only you have promised to be fair – no one else is so qualified.

**Taking notes**:

If you wish, you may take notes to help you remember what the witnesses said. If you do take notes, please don't share them with anyone until you go to the

jury room to decide the case. Don't let note-taking distract you from carefully listening to and observing the witnesses. When you leave the courtroom, you should leave your notes hidden from view in the jury room.

Whether or not you take notes, you should rely on your own memory of the testimony. Your notes are there only to help your memory. They're not entitled to greater weight than your memory or impression about the testimony.

**Course of the trial**:

Let's walk through the trial. First, each side may make an opening statement, but they don't have to. Remember, an opening statement isn't evidence, and it's not supposed to be argumentative; it's just an outline of what that party intends to prove.[8]

[Plaintiff's Statement]

Next, SAA will present its witnesses and ask them questions. After SAA questions the witness, GOAA may ask the witness questions – this is called "cross-examining" the witness. Then SAA will present its witnesses, and GOAA may cross-examine them. You should base your decision on all the evidence, regardless of which party presented it.

---

[8] The parties disagree as to the order of presentation of the case. That issue is currently being briefed for the Court's determination. The parties offer their respective presentations below.

[Defendant's Statement]

Next, Greater Orlando will present its witnesses and ask them questions. After Greater Orlando questions the witness, Sanford may ask the witness questions – this is called "cross-examining" the witness. Then Sanford will present its witnesses, and Greater Orlando may cross-examine them. You should base your decision on all the evidence, regardless of which party presented it.

After all the evidence is in, the parties' lawyers will present their closing arguments to summarize and interpret the evidence for you, and then I'll give you instructions on the law. You'll then go to the jury room to deliberate.

# JURY INSTRUCTION NO. 2 [9]

## 2.1 Stipulations

Sometimes the parties have agreed that certain facts are true. This agreement is called a stipulation. You must treat these facts as proved for this case.

[9] To be used only if a party seeks to introduce a stipulation.

# JURY INSTRUCTION NO. 3

## 2.2 Use of Depositions

A deposition is a witness's sworn testimony that is taken before the trial. During a deposition, the witness is under oath and swears to tell the truth, and the lawyers for each party may ask questions. A court reporter is present and records the questions and answers.

Certain depositions may be presented to you by a video or by reading the transcript. Deposition testimony is entitled to the same consideration as live testimony, and you must judge it in the same way as if the witness was testifying in court.

Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.

# JURY INSTRUCTION NO. 4 [10]

## 2.6 Use of Interrogatories

[You'll now hear/You've heard] answers that [name of party] gave in response to written questions the other side submitted. The questions are called "interrogatories." Before the trial, [name of party] gave the answers in writing while under oath.

You must consider [name of party]'s answers to as though [name of party] gave the answers on the witness stand.

[10] To be used only if a party seeks to rely on an interrogatory answer.

## GENERAL INSTRUCTIONS

## JURY INSTRUCTION NO. 5

### 3.1 Introduction

Members of the jury:

It's my duty to instruct you on the rules of law that you must use in deciding this case.

When I have finished you will go to the jury room and begin your discussions, sometimes called deliberations.

## JURY INSTRUCTION NO. 6

### 3.2.3 The Duty to Follow Instructions

Your decision must be based only on the evidence presented here. You must not be influenced in any way by either sympathy for or prejudice against anyone.

You must follow the law as I explain it – even if you do not agree with the law – and you must follow all of my instructions as a whole. You must not single out or disregard any of the instructions on the law.

The fact that a governmental entity or agency is involved as a party must not affect your decision in any way. A governmental agency and all other persons stand equal before the law and must be dealt with as equals in a court of justice. When a governmental agency is involved, of course, it may act only through people as its employees; and, in general, a governmental agency is responsible under the law for the acts and statements of its employees that are made within the scope of their duties as employees of the governmental agency.

## JURY INSTRUCTION NO. 7

### 3.3 Consideration of Direct and Circumstantial Evidence; Argument of Counsel; Comments by the Court

As I said before, you must consider only the evidence that I have admitted in the case. Evidence includes the testimony of witnesses and the exhibits admitted. But, anything the lawyers say is not evidence and isn't binding on you.

You shouldn't assume from anything I've said that I have any opinion about any factual issue in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision about the facts.

Your own recollection and interpretation of the evidence is what matters.

In considering the evidence you may use reasoning and common sense to make deductions and reach conclusions. You shouldn't be concerned about whether the evidence is direct or circumstantial.

"Direct evidence" is the testimony of a person who asserts that he or she has actual knowledge of a fact, such as an eyewitness.

"Circumstantial evidence" is proof of a chain of facts and circumstances that tend to prove or disprove a fact. There's no legal difference in the weight you may give to either direct or circumstantial evidence.

# JURY INSTRUCTION NO. 8

## 3.4 Credibility of Witnesses

When I say you must consider all the evidence, I don't mean that you must accept all the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. The number of witnesses testifying concerning a particular point doesn't necessarily matter.

To decide whether you believe any witness I suggest that you ask yourself a few questions:

1. Did the witness impress you as one who was telling the truth?
2. Did the witness have any particular reason not to tell the truth?
3. Did the witness have a personal interest in the outcome of the case?
4. Did the witness seem to have a good memory?
5. Did the witness have the opportunity and ability to accurately observe the things he or she testified about?
6. Did the witness appear to understand the questions clearly and answer them directly?
7. Did the witness's testimony differ from other testimony or other evidence?

## JURY INSTRUCTION NO. 9

### 3.5.1 Impeachment of Witnesses Because of Inconsistent Statements

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time a witness said or did something, or didn't say or do something, that was different from the testimony the witness gave during this trial.

But keep in mind that a simple mistake doesn't mean a witness wasn't telling the truth as he or she remembers it. People naturally tend to forget some things or remember them inaccurately. So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception. The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

## JURY INSTRUCTION NO. 10

**3.6.1 Expert Witness**

When scientific, technical or other specialized knowledge might be helpful, a person who has special training or experience in that field is allowed to state an opinion about the matter.

But that doesn't mean you must accept the witness's opinion. As with any other witness's testimony, you must decide for yourself whether to rely upon the opinion.

# JURY INSTRUCTION NO. 11

## Claims and Affirmative Defenses

### 3.7.1 Responsibility for Proof – Plaintiff's Claims, Defendant's Counterclaims – Preponderance of the Evidence

In this case it is the responsibility of the party bringing any claim to prove every essential part of its claims by a "preponderance of the evidence." This is sometimes called the "burden of proof" or the "burden of persuasion."

A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that the party's claim is more likely true than not true.

If the proof fails to establish any essential part of a claim or contention by a preponderance of the evidence, you should find against the party making that claim or contention.

When more than one claim is involved, you should consider each claim separately.

In deciding whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of a party's claims by a preponderance of the evidence, you should find for the other party as to that claim.

## JURY INSTRUCTION NO. 12

### 13.5.7 Genericness[11]

SAA contends that the phrase "ORLANDO INTERNATIONAL AIRPORT" is generic for an international airport that services the Orlando area. To succeed on this defense, SAA must prove that the phrase is "generic."

A "generic" term is a common or general name of a product or service whose primary significance to the consuming public is to identify a class of similar products or services, regardless of who sells them. The consuming public consists of people who may buy or use, or consider buying or using, the product or similar products. For example, "cola" is a generic term for a type of soft drink, so it cannot function by itself as a trademark for this type of soft drink.

[11] Seventh Circuit Pattern Civil Jury Instructions § 13.5.7. Greater Orlando contends Genericness should not go to the jury for the reasons explained in Greater Orlando's motion in limine. In addition, as SAA contends genericness is an affirmative defense to Greater Orlando's infringement claims, this instruction is in the wrong location. The 11th Circuit has an instruction on genericness under Instruction 10.2 addressing unregistered works, the situation at hand so there is no reason to use the proposed instruction from the Seventh Circuit. Greater Orlando also understands this Instruction 13.5.7 is intended to be used when a party is challenging an incontestable mark as generic.

# JURY INSTRUCTION NO. 13

**10.1 Trademark Infringement – (Combined with Unregistered Trademark, 10.2)**

GOAA claims that SAA has infringed its registered trademark, 2 ovals next to the words Orlando International Airport as part of a design[12] which is in evidence. ("design trademark"). You are instructed and must accept as a fact that GOAA owns a federal registration of the trademark it seeks to protect in this action. [It is SAA's burden to prove that GOAA's design trademark is invalid. – SAA Comment – We are not pursuing invalidity of the registration for the design. GOAA has no registrations for the words. The foregoing sentence conflates the design registration with the other rights GOAA asserts.] [13]

GOAA additionally claims it has trademark rights in the words Orlando International Airport, but GOAA does not have a trademark registration for just those words.

To prove its claims, GOAA must prove the following facts by a preponderance of the evidence:

1: GOAA owns a trademark that is entitled to protection; and

[12] Greater Orlando does not believe the Court need describe the design and is not part of the standard instruction.

[13] SAA objects to this language. This language conflates the design registration with the unregistered words. SAA is not pursuing cancellation of the design registration. Greater Orlando contends it is appropriate and comes directly from 11th Cir Standard instructions.

2: That SAA is using a mark that infringes upon GOAA's trademark(s).

**Design Trademark**. To find infringement of the design trademark, you must first find that GOAA owns a federal registration of the trademark at issue in this case. To do this, you must find that the trademark is covered by a registration on the Principal Register of the U.S. Patent and Trademark Office. If you do not find that GOAA owns a federal registration, then you must determine whether GOAA owns a trademark that is entitled to protection.[14]

If you find [Because][15] GOAA's design mark is covered by a federal registration, GOAA enjoys what is known as "constructive nationwide priority" in its design mark, whether or not GOAA uses the design mark on a nationwide basis. GOAA is presumed to have started using the design mark nationwide as of its filing date, even if it only used it in a limited area. An owner of a trademark may obtain a certificate of registration issued by the United States Patent and Trademark Office and may submit that certificate as evidence of the validity and protectability of the trademark and of the certificate holder's ownership of the trademark covered by that certificate.

---

[14] Language offered by SAA. Greater Orlando disagrees and contends there has never been a dispute over ownership or registration.

[15] The parties disagree on which wording from the 11th Cir instruction should apply in this case.

In this case, I have determined that Greater Orlando's design trademark is covered by an incontestable registration on the Principal Register. The effect of that determination is that the registration is conclusive evidence that the trademark is at least descriptive with secondary meaning. You must accept that design trademark was at least descriptive and possessed secondary meaning at the time Greater Orlando applied for its registration.[16]

[Validity of Unregistered Mark, 10.2]

To find infringement of the unregistered phrase "Orlando international airport," You must first find that GOAA owns protectable rights to a trademark, including that that phrase can serve as a trademark. GOAA must prove by a preponderance of the evidence that the phrase is:

1: Used in commerce;

2: Distinctive; and

3: Nonfunctional.

<u>Used in Commerce</u>

[16] SAA objects to this instruction– one of SAA's motions in limine is to preclude confusing the jury based on the status of the stylized design registration as compared to the claims GOAA is making to the unregistered generic phrase Orlando international airport.

The right to a particular trademark grows out of the trademark's use. Use is sufficient to establish rights if it is public enough that it identifies the goods in question as those of the person using the trademark. It is sufficient to establish valid rights if the trademark is used in genuine transactions in commerce and the use is consistent and continuous. Mere "token use" of the trademark – use made solely to reserve rights in the trademark – is not enough to establish valid rights. Wide public recognition of the trademark is not required, but secret or undisclosed use is not adequate.

A trademark is used in commerce and in connection with goods when it is placed on:

1. the goods or their containers or the associated displays,

2. the tags or labels affixed to the goods or their containers, or

3. the documents associated with the goods or their sale, and

4. the goods are sold or transported in commerce in more than one state, or in the United States and a foreign country.

<u>Distinctiveness</u>

For GOAA to have a protectable trademark, the trademark must be distinctive.

To be distinctive, a trademark can either:

1. Be inherently distinctive; or

2. Have acquired distinctiveness.[17]

You must look at the trademark as a whole when evaluating the distinctiveness or lack of distinctiveness.

The parties agree that the phrase Orlando international airport is not inherently distinctive.[18,19]

Generic[20]:

A claimed trademark is generic if it is the word, name, symbol, or device, or any combination thereof, by which the good is known. An example of a generic trademark is "escalator" for moving stairs, or "restaurant" for a dining establishment.

---

[17] SAA objects to this sentence SAA contends it is not appropriate or not legally accurate. In other words, the trademark must be recognized in its market as a trademark. Secondary meaning/acquired distinctiveness does not save a generic phrase. *See Booking.com* Greater Orlando contends this is language directly from 11th Circuit Jury instruction.

[18] Greater Orlando Objects to this statement.

[19] GOAA has admitted this statement. *See* GOAA's response to Requests for Admissions 13 & 14.

[20] Greater Orlando agrees this is an appropriate definition of genericness from the standard instruction. Greater Orlando contends it should be included with the "type of mark" as it exists in the standard instruction and set forth below. SAA seeks to introduce this instruction at this point as it believes the mark is at best descriptive and the remainder of the instruction does not apply.

Whether a claimed trademark is generic does not depend solely on the term itself, but on use of the term. A word may be generic of some things but not of others. For example, "ivory" is generic for elephant tusks, but it is not generic for soap.

Whether a claimed trademark is generic is viewed from the perspective of a member of the relevant public evaluating the trademark.

Claimed marks that are generic are not protected and cannot be registered with the U.S. Patent and Trademark Office. Claimed marks that are generic cannot serve as a trademark, even if the generic phrase has acquired distinctiveness, a term I will now explain to you.

Acquired Distinctiveness

A claimed trademark has acquired secondary meaning if the primary significance of the trademark in the minds of the consuming public is not the associated good itself, but instead the source or producer of the good.

There are four factors you may use in determining secondary meaning:

1. The length and nature of the trademark's use;

2. The nature and extent of advertising and promotion of the trademark;

3. The efforts of the trademark's owner to promote a conscious connection between the trademark and its business; and

4. The degree to which the public recognizes the good by the trademark.

Inherent Distinctiveness.[21]

A trademark also is protectable if it is inherently distinctive. To determine whether a claimed trademark is inherently distinctive, you must first place it into one of four "types" or categories. Trademarks come in different "types" or categories, namely: "generic," "descriptive," "suggestive," "arbitrary," and "fanciful" or "coined." The type of trademark is relevant to the trademark's strength. I will now describe each type of trademark in the order of their general relative strength:

a. Generic: A claimed trademark is generic if it is the word, name, symbol, or device, or any combination thereof, by which the good is known. An example of a generic trademark is "escalator" for moving stairs. Whether a claimed trademark is generic does not depend on the term itself, but on use of the term. A word may be generic of some things but not of others. For example, "ivory" is generic for elephant tusks, but it is not generic for soap. Whether a claimed

[21] SAA contends this section of the Standard Instruction should not be given. Greater Orlando disagrees and argues the instruction should track Instruction 10.2

trademark is generic is viewed from the perspective of a member of the relevant public evaluating the trademark. Claimed marks that are generic are not protected and cannot be registered with the U.S. Patent and Trademark Office.

<u>Descriptive:</u>

A claimed trademark is "descriptive" if it merely describes an ingredient, quality, characteristic, function, feature, purpose, or use of the good. An example of a descriptive trademark would be Vision Center for an eyeglasses store.

Descriptive trademarks are eligible for protection if they have acquired "secondary meaning." I previously instructed you on how to determine if a claimed trademark has acquired secondary meaning.

c. Suggestive[22]:

A "suggestive" trademark suggests, rather than describes, qualities of the underlying good. If a consumer's imagination is necessary to make the connection between the trademark and the goods, then the trademark suggests the features of the goods. An example of a suggestive trademark is ICEBERG for a refrigerator. Suggestive trademarks are eligible for protection without proof of secondary meaning.

[22] See, footnote 27

d. Arbitrary and Fanciful or Coined:

An "arbitrary" trademark is a trademark that is a real word but has no logical relationship to the underlying goods. An example of an arbitrary trademark is DOMINO for sugar. A "fanciful" or "coined" trademark is a trademark created solely to function as a trademark but which has no meaning beyond the trademark itself. An example of a fanciful or coined trademark is EXXON for gasoline. Arbitrary and fanciful or coined trademarks are eligible for protection without proof of secondary meaning.

TRADEMARK INFRINGEMENT**: Introductory Jury Charge**

If you have determined that GOAA owns a trademark that is entitled to protection, you must next consider whether SAA infringed GOAA's trademark. The test for infringement is whether SAA's use of the accused marks is "likely to cause confusion" with GOAA's trademark.

That is, you must determine if SAA, without GOAA's consent, used the same or a similar trademark in connection with the sale of, or the offer to sell, goods or services in a manner that is likely to cause confusion among consumers as to the source, affiliation, approval, or sponsorship of the goods. "Source," "origin," "affiliation," "approval," or "sponsorship" means that the public

believes that SAA's goods or services come from, are affiliated with, are approved by, or sponsored by GOAA

It is not necessary that the accused trademark used by SAA be an exact copy of GOAA's trademark. Instead, GOAA must demonstrate, by a preponderance of the evidence, that SAA's use of its trademarks is, when viewed in its entirety, likely to cause confusion as to the source, origin, affiliation, approval, or sponsorship of the goods in question.

**Infringement**

GOAA claims that SAA has infringed its trademark rights. For GOAA to succeed on this claim you must find by a preponderance of the evidence that SAA:

1: used the trademark in connection with the sale or offer to sell goods or services;

2: used the trademark in commerce; and

3: used the trademark in a manner that is likely to:

a. cause confusion, mistake, or deception as to

b. the source, origin, affiliation, approval, or sponsorship of SAA's services.

**Infringement: Likelihood of Confusion (Seven-Factor Test)**

There are seven factors you can use to determine whether a likelihood of confusion exists. No single factor or consideration controls, and GOAA is not

required to prove all, or even most, of the factors are present in any particular case. You may also use factors other than these seven. You should weigh all of the relevant evidence in determining whether a likelihood of confusion exists.

1. <u>Type and Strength of GOAA's Trademark</u>[23]

The first factor is the "type and strength" of the trademark. Trademarks come in different "types" or categories, namely, "generic," "descriptive," "suggestive," "arbitrary," and "fanciful" or "coined." The type of a claimed trademark is relevant to the trademark's strength.

Some trademarks are stronger than others. The "stronger" the trademark, the more protection should be given to it. I will now describe each type of trademark in the order of their general relative strength.

a. <u>Generic:</u>

A claimed trademark is generic if it is the word, name, symbol, device, or any combination thereof, by which the good commonly is known. An example of a generic trademark is "escalator" for moving stairs.

[23] This portion of the instruction is disputed. SAA uses the instruction 10.1, designed for registered works only, whereas Greater Orlando proposed using the "Type and Strength" language from 10.2 as the strength of the mark is described earlier when the jury is asked to determine the type of the mark in determining trademark eligibility. The parties have attempted to combine the two lengthy instructions to avoid redundancy, and in doing so, this issue arises. An alternative, albeit lengthy, is to read the jury both 10.1 (Registered Marks) and 10.2 (Unregistered Marks).

Whether a claimed trademark is generic does not depend solely on the term itself, but on use of the term. A word may be generic of some things but not of others. For example, "ivory" is generic for elephant tusks, but it is not generic for soap.

Whether a claimed trademark is a generic term is viewed from the perspective of a member of the public evaluating the trademark.

Claimed generic trademarks are not protectable as marks. They cannot be registered with the U.S. Patent and Trademark Office. Even if a generic phrase has acquired distinctiveness (using the test I will describe to you again momentarily), it still can not be a trademark.

b. Descriptive:

A "descriptive" trademark only describes an ingredient, quality, characteristic, function, feature, purpose, or use of the good provided under it. An example of a descriptive trademark would be VISION CENTER for an eyeglasses store. Descriptive trademarks are only eligible for registration with the U.S. Patent and Trademark Office if the trademark has acquired "secondary meaning." A trademark has acquired secondary meaning if the primary significance of the

trademark in the minds of the consuming public is not the associated good itself, but instead the source or producer of the good.

There are four factors you may use in determining whether secondary meaning exists:

1. The length and nature of the trademark's use;
2. The nature and extent of advertising and promotion of the trademark;
3. The efforts of the trademark owner to promote a conscious connection between the trademark and its business; and
4. The degree to which the public recognizes GOAA's good by the trademark.

c. Suggestive:

A "suggestive" trademark suggests, rather than describes, qualities of the underlying good. If a consumer's imagination is necessary to make the connection between the trademark and the goods then the trademark suggests the features of the good. An example of a suggestive trademark is ICEBERG for a refrigerator. Suggestive trademarks are eligible to be registered in the U.S. Patent and Trademark Office without proof of secondary meaning.

d. Arbitrary and Fanciful or Coined:

An "arbitrary" trademark is a real word but has no logical relationship, to the underlying goods. An example of an arbitrary trademark is DOMINO for sugar.

A "fanciful" or "coined" trademark is a trademark created solely to function as a trademark but which has no meaning beyond the trademark itself. An example of a fanciful or coined trademark is EXXON for gasoline.

Arbitrary and fanciful or coined trademarks are eligible to be registered in the U.S. Patent and Trademark Office without proof of secondary meaning.

e. <u>Additional Considerations Relating To Trademark Strength:</u>

When evaluating the strength of GOAA's trademark, you may also consider the extent of any use by third parties of similar trademarks, GOAA's promotional expenditures, and the volume of GOAA's sales under its trademark, [[ Plaintiff objects to this language based on our MIL regarding the incontestable design registration --and whether Greater Orlando's registration has achieved incontestable status. -- ]]

1. Type and Strength of Greater Orlando's Trademark[24]

The first factor is the "type and strength" of the trademark. Some trademarks are stronger than others. The "stronger" the trademark, the more protection should be given to it. I previously have instructed you as to the four "types" or categories of trademarks, namely, "generic," "descriptive," "suggestive," "descriptive,"

[24] See, footnote 29

"arbitrary," and "fanciful" or "coined." The type of a claimed trademark is relevant to the trademark's strength. When evaluating the strength of [name of Greater Orlando's trademark, you also may consider the extent of any use by third parties of similar trademarks, Greater Orlando's promotional expenditures, and the volume of Greater Orlando's sales under its trademarks.

2. Similarity of the Parties' Trademarks

In evaluating whether trademarks are similar, you may consider the "overall impression" that GOAA's and SAA's trademarks create, including the sound, appearance, and manner in which they are used. You may look at the trademarks as a whole rather than simply comparing their individual features.

3. Similarity of the Parties' Services

This factor considers not only whether the consuming public can readily distinguish between the parties' services, but also whether the services at issue are of a kind that the public attributes to a single source.

4. Similarity of the Parties' Sales Channels, Distribution, and Customers

This factor considers where, how, and to whom the parties' services are sold. Similarities increase the possibility of consumer confusion, mistake, or deception.

5. Similarity of the Parties' Advertising Media

This factor looks to each party's method of advertising. It is not a requirement that GOAA and SAA advertise in the same magazines, publications, or other advertising outlets. The issue is whether the parties use the same forums and media outlets to advertise, leading to possible confusion.

6. SAA's Intent

You may also consider whether SAA intended to infringe on GOAA's trademark. That is, did SAA adopt its trademark with the intention of deriving a benefit from GOAA's reputation? If you determine that Sanford intentionally ignored the potential for infringement, you may impute to Sanford an intent to infringe.[25]

7. Actual Confusion

Because the presence of actual confusion usually is difficult to show, a finding of actual confusion is not required to find trademark infringement. Alternatively, the absence of actual confusion does not necessarily mean SAA is not liable for trademark infringement.

[25] SAA objects to this sentence. Greater Orlando contends it is from the 11th Instruction.

The evidence of actual confusion of trademarks should be reasonably significant. You should weigh the alleged actual confusion using the following factors:

1. The amount and duration of the confusion;

2. The degree of familiarity the confused party has with the goods or services;

3. The type of person complaining of the alleged actual confusion (for example, whether that person is a customer or a noncustomer); and

4. The alleged number of people who are actually confused (for example, whether the confused person is an actual customer or someone else).

If you find that SAA has infringed GOAA's trademarks, you must next consider SAA's affirmative defenses.[26]

[26] As set forth in Greater Orlando's motion in limine, SAA has no affirmative defenses to be tried to the jury. But if genericness is an affirmative defense, the sentence is appropriate.

## JURY INSTRUCTION NO. 14 [27]

### 3.7.2 Responsibility for Proof – Affirmative Defense Preponderance of the Evidence

In this case, each party asserts affirmative defenses. Even if the party bringing the claim proves its claims by a preponderance of the evidence, the other party can prevail in this case if it proves an affirmative defense by a preponderance of the evidence.

When more than one affirmative defense is involved, you should consider each one separately.

I caution you that the [Defendant, Counter-Defendant, cross-claim Defendant] does not have to disprove the [Plaintiff's] [Counter-Plaintiff's] [cross-claimant's] claim[s], but if the [Defendant, Counter-Defendant, cross-claim Defendant] raises an affirmative defense, the only way it can prevail on that specific defense is if it proves that defense by a preponderance of the evidence.

[27] Greater Orlando contends there are no affirmative defenses for the jury to address, other than potentially genericness, which is addressed earlier. If there are other defenses for the jury, Greater Orlando agrees this is an appropriate instruction. If genericness is an affirmative defense, it should be specified as SAA's burden here.

**JURY INSTRUCTION NO. 15** [28]

**10.3 Defenses to Claim of Infringement of a Trademark**

If you find that  has shown a likelihood of confusion, you must consider SAA's defenses. SAA claims that it is not liable to GOAA for trademark infringement because one or more of the following defenses exist. SAA has the burden of proving its defenses to trademark infringement by a preponderance of the evidence.

[[XXX Instructions to be added based on the Court's resolution of SAA's MSJ XXX]]

Remedies [29]

If you find that at least one of Greater Orlando's trademarks are valid, that Sanford has infringed it, and Sanford does not have a defense to the infringement, you must determine whether, and to what extent, money damages should be awarded.

Greater Orlando's Actual Monetary Damages

[28] As set forth earlier, Greater Orlando contends there are no affirmative defenses for the jury. Greater Orlando agrees this is an appropriate instruction if there are any defenses to address.

[29] SAA contends Greater Orlando is not entitled to a jury determination of any remedies.

You may award actual damages Greater Orlando has sustained. Greater Orlando may recover the economic injury to its activity proximately resulting from Sanford's wrongful acts. You are not required to calculate actual damages with absolute exactness – you may make reasonable approximations. However, any award of actual damages to Greater Orlando must be just and reasonable, based on facts, and proved by Greater Orlando by a preponderance of the evidence.

Defendant's Profits and Calculation of Profits

In addition to Greater Orlando's actual damages, you may also make an award based on an accounting of Sanford's profits if you find that:

- Sanford's conduct was willful and deliberate;
- Sanford was unjustly enriched; or
- An award of Sanford's profits is necessary to deter [name of defendant]'s future conduct.

A defendant commits a "willful violation" of a trademark when that defendant knowingly and purposefully capitalizes on and appropriates for itself the goodwill of a plaintiff. "Unjust enrichment" occurs if Sanford receives a benefit to which it is not entitled. In determining Sanford's profits, Greater Orlando only is required to prove Sanford's gross sales. Sanford may then prove the amount of

sales made for reasons other than the infringement. Sanford also may prove its costs or other deductions which it claims should be subtracted from the amount of its sales to determine its profits on such sales. Any costs or deductions that Sanford proves by a preponderance of the evidence are required to be subtracted from the sales attributable to the infringement and the difference is the amount that may be awarded to Greater Orlando.

## JURY INSTRUCTION NO. 16

**3.9 Election of Foreperson Explanation of Verdict Form**

When you get to the jury room, choose one of your members to act as foreperson. The foreperson will direct your deliberations and speak for you in court.

A verdict form has been prepared for your convenience.

[Explain verdict]

Take the verdict form with you to the jury room. When you've all agreed on the verdict, your foreperson must fill in the form, sign it and date it. Then you'll return it to the courtroom.

If you wish to communicate with me at any time, please write down your message or question and give it to the court security officer. The court security officer will bring it to me and I'll respond as promptly as possible – either in writing or by talking to you in the courtroom. Please understand that I may have to talk to the lawyers and the parties before I respond to your question or message, so you should be patient as you await my response. But I caution you not to tell me how many jurors have voted one way or the other at that time. That type of

information should remain in the jury room and not be shared with anyone, including me, in your note or question.

## JURY INSTRUCTION NO. 17

### 3.8.1 Duty to Deliberate

Of course, the fact that I have given you instructions concerning the issue of Deltona's damages should not be interpreted in any way as an indication that I believe that the Deltona should, or should not, prevail in this case.

Your verdict must be unanimous – in other words, you must all agree. Your deliberations are secret, and you'll never have to explain your verdict to anyone.

Each of you must decide the case for yourself, but only after fully considering the evidence with the other jurors. So you must discuss the case with one another and try to reach an agreement. While you're discussing the case, don't hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong. But don't give up your honest beliefs just because others think differently or because you simply want to get the case over with.

Remember that, in a very real way, you're judges – judges of the facts. Your only interest is to seek the truth from the evidence in the case.